**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:07CV-00132-JHM**

**AA-1 SERVICES, INC.**                                                         **PLAINTIFF**

**VS.**

**PITTSBURG TANK & TOWER CO., INC.**                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court are cross-motions for summary judgment filed by the parties. Plaintiff's motion for summary judgment is filed in the record at DN 26. Defendant's Response is filed at DN 28, and Plaintiff's Reply at DN 32. Defendant's motion for summary judgment is filed at DN 23 (with memorandum in support at DN 25). Plaintiff's Response is filed at DN 30, with no Reply filed by Defendant. The motions are ripe for determination.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The inquiry under Rule 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.

1989). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial..." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and demonstrating the absence of any genuine issue of material fact. Celotex, 477 U.S. at 322-323. Once the moving party satisfies this burden, the burden shifts to the non-moving party to demonstrate there is a genuine issue of fact for trial. Anderson, 477 U.S. at 247-248. Although the Court must review the evidence in a light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial," by affidavit, depositions, answers to interrogatories, and/or admissions on file. Fed.R.Civ.P. 56(c) and (e) (emphasis added); Celotex, 477 U.S. at 324. The substantive law governing the case will determine what issues of fact are material. Street, 886 F.2d at 1479-1480. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, the motion for summary judgment should be granted." Pitts v. Michael Miller Car Rental, 942 F.2d 1067, 1069-1070 (6th Cir. 1991) (citing Matsushita Elec. Ind. Co., 475 U.S. at 586).

## FACTS

The salient facts of this lawsuit are not disputed. The recitation of facts set forth

below are largely developed from the affidavit of Rex Johnston, Sr., President of AA-1 Services, Inc. (hereinafter AA-1), the Plaintiff, and appended to AA-1's motion as Exhibit A. Notably, Defendant, Pittsburg Tank & Tower Company, Inc. (hereinafter Pittsburg Tank) does not undertake to dispute the factual statements contained within Johnston's affidavit.

AA-1 is a California corporation in the business of commercial and industrial painting, including the painting of water towers. In April, 2006, the City of Vernon, California, advertised to receive bids on a contract, referred to as "Contract No. 598, Elevated Tank Seismic Upgrade and Exterior Paint" (the Project), to repair and refurbish a city water tower that had originally been constructed by Pittsburg Tank.

In preparation for submitting a bid on the Project, AA-1 solicited bids from subcontractors for certain portions of the job. On April 28, 2006, Pittsburg Tank submitted a bid of $93,000 for performing a portion of the work, and upon receipt of this bid, Johnston called Pittsburg Tank to advise it was the low bidder. Johnston also suggested it recalculate the value of its work. Pittsburg Tank assured Johnston its bid price on the subcontract was accurate and that it was able to perform the work for less because it was the original builder of the water tower.

In accord with public works construction industry custom and practice, AA-1 relied on Pittsburg Tank's bid price in formulating its own Prime Contract bid price on the Project.

The City of Vernon received and opened bids on May 2, 2006. In the days that followed, AA-1 and Pittsburg Tank communicated regarding the project and Pittsburg Tank's role in the work. Johnston informed Pittsburg Tank that AA-1 had used Pittsburg Tank's bid in formulating its own bid on the Prime Contract. During this interval in time, Pittsburg Tank did not communicate to AA-1 any perceived errors in its bid, nor otherwise attempt to withdraw, revoke,

or qualify its bid.

On May 24, 2006, the City of Vernon awarded AA-1 the Prime Contract on the Project and notified AA-1 of this by letter dated May 25, 2006. On the same day Johnston faxed to Pittsburg Tank, AA-1's acceptance of Pittsburg Tank's earlier bid. Both AA-1 and Pittsburg Tank agree this faxed document (Exhibit E to AA-1's motion for summary judgment) is the only contract (hereinafter the Subcontract) between the parties related to the Project, and both parties agree they are bound by its terms and conditions.

On June 1, 2006, Pittsburg Tank sent a letter (Exhibit I to AA-1's motion for summary judgment) acknowledging its commitment to the Project and expressing gratitude to AA-1 for its demonstrated confidence in Pittsburg Tank. This letter discussed some of the specifics involved in gearing up to perform the work. No mention was made of any problems perceived by Pittsburg Tank in moving forward to fulfill its obligations to AA-1.

On June 14, 2006, twenty days following AA-1's faxing of the Subcontract to Pittsburg Tank, Pittsburg Tank called AA-1 to demand it be paid an additional $157,000 to proceed with its work on the project. This call was followed up by a letter dated June15, 2006 (Exhibit J to AA-1's motion for summary judgment) from Pittsburg Tank to AA-1 in which it states, *inter alia,* that it "would require several things to proceed with this project...", listing these items, including the boost of $157,000 in the amount it must be paid to perform its work. It seems this increase was demanded to account for California wage rates.[1]

---

[1] In a subsequent letter dated July 3, 2006 from Pittsburg Tank to AA-1 (Exhibit K to AA-1's motion for summary judgment) it is apparent that Pittsburg Tank had mistakenly utilized Kentucky wage rates for its laborers rather than the appropriate California wage rate, the situs of the work, in submitting its $93,000 bid on April 28. This letter also noted other mistakes made by Pittsburg Tank in calculating its bid.

4

At Pittsburg Tank's request, AA-1 immediately wrote a letter to the City of Vernon, dated July 3, 2006, (Exhibit L to AA-1's motion for summary judgment) requesting the City consider Pittsburg Tank's dilemma by adding $157,000 to the contract price. On July 13, 2006, the City responded by letter (Exhibit M to AA-1's motion for summary judgment) denying AA-1's request for additional funding made on behalf of Pittsburg Tank.

For a period of time thereafter AA-1 and Pittsburg Tank continued to communicate in order to negotiate a scenario whereby Pittsburg Tank would perform its obligations under the Subcontract. Pittsburg Tank continued to refuse to perform the work prescribed by the Subcontract and eventually, in order to meet its own Prime Contract obligations with the City of Vernon, AA-1 hired another subcontractor to perform the work that Pittsburg Tank failed to undertake.

AA-1 paid CJS Industrial Maintenance $185,159.00 to perform the work Pittsburg Tank had originally bid at $93,000, thereby suffering a loss of $92,159.00 which the City of Vernon would not agree to pay.

As stated above, both parties agree the Subcontract forms the basis for determining whether Pittsburg Tank is liable to AA-1 for breach of contract and ensuing damages. In arguing its own motion for summary judgment and in responding to AA-1's motion, Pittsburg Tank does not undertake to challenge the facts outlined in AA-1's motion and memorandum filed in support of the motion, the accompanying affidavit of Rex Johnston, Sr., or the exhibits attached thereto.

Pittsburg Tank's defense to liability on the Subcontract is simple and focused. At the end of the "bid language" of the Subcontract, just before the "**ACCEPTANCE**" language, appears the following language:

> "**Terms:** 30% down payment with order; followed by mutually agreeable progress payments"

Pittsburg Tank asserts AA-1 failed to make this "30% down payment with order...". AA-1 does not deny this assertion. As discussed below, Pittsburg Tank argues this omission by AA-1 is fatal to its claim against Pittsburg Tank for breach of contract.

CONCLUSIONS OF LAW

Pittsburg Tank does not deny it failed to perform its obligations under the Subcontract. It argues, however, that its failure to perform is excused by AA-1's failure to pay Pittsburg Tank a "30% down payment with order". It argues this term of the contract operates as a condition precedent which must be fulfilled by AA-1 prior to Pittsburg Tank's obligation to perform.

AA-1 does not deny it failed to make the 30% down payment, but argues the obligation is not a condition precedent which must be met in order to trigger Pittsburg Tank's performance obligations. AA-1 also asserts that in any event, failure to make a 30% down payment is excused by Pittsburg Tank's own anticipatory breach of the contract, occurring when it demanded to be paid an additional $157,000 (for a total of $250,000) as a condition of fulfilling its work obligations under the Subcontract.

Pittsburg Tank's argument fails. The language "**Terms:** 30% down payment with order; followed by mutually agreeable progress payments" can not be construed by this Court to constitute a condition precedent that must be met in order to trigger Pittsburg Tank's performance.

The paramount obligations of the parties under the contract in question is for Pittsburg Tank to perform the work specified and for AA-1 to pay Pittsburg Tank for that work. The down payment language is concerned merely with the timeliness of the payment obligation. It does

not affect those paramount obligations just described.

A condition precedent is enforceable only if it is clearly stated in the contract and there is no agreement in the absence of the condition precedent. Horn v. Ranier, Ky.App., 560 S.W.2d 233, 234-235 (1977); Amber Mill. Co. v. Kentucky Macaroni Co., 168 S.W.2d 34, 35 (Ky.App. 1942); Mock v. Trustees of First Baptist Church, 67 S.W.2d 9, 11 (Ky.App. 1934). There is no language in the Subcontract which clearly abrogates the paramount obligations of the parties to perform the work in question and to pay for that work if AA-1 fails to timely remit the 30% down payment.

As noted in A.L. Pickens v. Youngstown Sheet & Tube Co., 650 f.2d 118 (6th Cir.1961), a Sixth Circuit case interpreting Kentucky Law:

> [C]onditions precedent are not favored and the courts will not construe stipulations to be precedent unless required to do so by plain, unambiguous language or by necessary implication. This is particularly so when interpreting a stipulation as a condition precedent ... would work a forfeiture or result in inequitable consequences." *Id* at 121.

Pittsburg Tank's own conduct immediately following AA-1's acceptance of the bid on May 25, 2006, belies any importance it now says it places on the "down payment" language. As set forth above, on June 1, 2006, shortly after being advised of the acceptance of its bid, Pittsburg Tank sent a letter acknowledging its commitment to the Project. No mention was made of AA-1's failure to render a down payment. Then, on June 14, 2006, only twenty days following the May 25 acceptance of its bid, Pittsburg Tank notified AA-1 that it would not proceed with its required work performance unless it was paid an additional $157,000. Again, no mention was made of the failure

of down payment.[2] A reading of Pittsburg Tank's letter of June 15, 2006, to AA-1 leaves no doubt the concern of Pittsburg Tank was the *amount* it would be paid and not *when* it would be paid.

The post-acceptance communications of the parties make it abundantly clear Pittsburg Tank's repudiation of its contract obligations had its genesis in its own bid mistakes. Even then, AA-1, on behalf of Pittsburg Tank, communicated with the City of Vernon in an effort to absolve Pittsburg Tank from the consequences of its own unfortunate errors. In the end it left AA-1 in the untenable position of having to pay another contractor a sum well in excess of Pittsburg Tank's bid price with no hope of recouping this loss from the City of Vernon. To enforce the down payment language as a condition precedent to Pittsburg Tank's performance would have the inequitable consequence referred to in A.L. Pickens, supra.

This Court holds that the down payment language of the Subcontract was not a condition precedent that must have been met by AA-1 to trigger Pittsburg Tank's performance obligation.

Even if this Court were to make the stretch suggested by Pittsburg Tank, when Pittsburg Tank announced to AA-1, only twenty days after formation of the Subcontract, that it would not perform in the absence of additional compensation, its breach of the Subcontract was not merely anticipatory, but was complete, and from that point forward AA-1 had no further obligation to Pittsburg Tank except to mitigate its damages.

---

[2] AA-1 points out that payment of a 30% down payment at this juncture becomes confusing – 30% of $93,000 or 30% of $250,000?

DAMAGES

AA-1 claims as damages the difference between Pittsburg Tank's bid of $93,000 and the $185,159 it was required to pay CJS Maintenance to perform the same work Pittsburg Tank failed to perform under the Subcontract, the sum of $92,159.

While the issue of liability is foreclosed, the Court is unclear on this particular issue relating to damages. The Court is of the opinion AA-1 is entitled to recover from Pittsburg Tank the reasonable cost of cover, i.e., that sum which represents the reasonable cost of replacing Pittsburg Tank's performance that exceeds the bid price of $93,000. Thus, if the sums paid to CJS Maintenance represent the reasonable cost of securing replacement performance for the exact same work that was to have been performed by Pittsburg Tank, the sum of $92,159 is a proper measure of damages.

That opens two questions. First, was CJS paid for performing the exact same work Pittsburg Tank was to have performed, or was there a difference in the work, brought on, for example, by an approved change order? Secondly, was the money paid to CJS a reasonable sum for the work performed?

Pittsburg Tank has made one assertion in paragraph 11 of its Response to Plaintiff's Motion for Summary Judgment (DN 28) that is puzzling. There it is stated, "Defendant submits that the scope of the work with respect to the re-bid by Plaintiff is disputed by Defendant. That is a material factual dispute that would exist relating to the damages because the scope of work that was resubmitted on a subsequent bid was different than the scope of work submitted by Defendant." The Court is not sure what this means or how it relates to the damage issues in this case.

9

AA-1 also claims it is entitled to recover its attorneys fees expended in the effort to recover damages herein, fees totaling nearly $30,000. AA-1 has presented this Court with no legal vehicle by which it might be awarded legal fees in this action, and the Court is not aware of any applicable mechanism by which this might be accomplished. These fees must be denied.

NOW THEREFORE IT IS HEREBY ORDERED that:

1. Defendant's Motion for Summary Judgment (DN 23) is DENIED with respect to all issues raised therein, EXCEPT that portion of its motion asking the Court to deny attorneys' fees to Plaintiff, which portion is GRANTED.

2. Plaintiff's Motion for Summary Judgment (DN 26) is GRANTED as to the issue of liability, but RESERVED as to the issue of damages, EXCEPT that Plaintiff's Motion for Summary Judgment on the issue of attorneys' fees as damages is DENIED.

3. This order is not final nor appealable.

4. The Court will conduct a telephonic status conference with the parties on September 11, 2008 at 9:30 a.m. (CDT) to discuss the procedure for resolving the damages issue.

Copies:    Counsel of Record